In the Matter of PALM INVESTMENTS
OF PINELLAS COUNTY,
INC., Debtor.

Bankruptcy No. 77–752 T.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Feb. 12, 1980.

Albert I. Gordon, Tampa, Fla., for debtor.

### ORDER ON OBJECTION TO CLAIM NO. 32 OF VALLEYDALE ESTATES, INC.

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS an arrangement proceeding and the matter under consideration is an objection to Claim No. 32 filed in the proceeding by Valleydale Estates, Inc. (Valleydale Corp.). The claim was filed in the amount of $96,464.34 and is challenged by Palm Investments of Pinellas County, Inc. (Palm), the Debtor involved in the arrange-ment proceeding who contends that it is not indebted to Valleydale in any amount. The Court heard testimony of witnesses at the Final Evidentiary Hearing and considered the entire record together with the exhibits and now finds and concludes as follows:

Palm, a Florida corporation, was at the time pertinent to the transaction relevant to the claim under consideration, the owner and operator of two projects. One known as Valleydale Acres and the other as Brittany Estates. These facilities were operated by Palm as divisions and not as separate legal entities, although for internal book-keeping purposes, both projects maintained separate books and records.

On or about April 1, 1976, by virtue of a spin-off, the Valleydale Acres project was incorporated under the name of Valleydale Estates, Inc. (Valleydale Corp.) by William Moomaw who acquired 25% of the stock issued; Paul Johnson who acquired 25% of the stock issued; and Palm who acquired 50% of the stock issued in the newly formed corporation. Moomaw and Johnson paid $50,000 cash respectively for their shares and Palm transferred the Valleydale project, which was a mobile home park, to the newly formed corporation and purport-edly all of the assets of Valleydale Acres "which purportedly included an account re-ceivable" due from the Brittany Estates project in the amount of $55,765.59.

The claim filed by Valleydale consists of two items. The first in the amount of $40,698.75 and the second in the amount of $55,765.59. The first item purports to be supported by a typewritten list of debits and credits indicating entries commencing in April of 1976, the month Valleydale was incorporated, up to September of 1976. This typewritten list also contains three ad-ditional debit entries dated October 8, 1976, November 1, 1976 and December 10, 1976, respectively.

The proof of claim under consideration was filed by Jane C. Pinciotti who was the Secretary Treasurer of Valleydale Corp. It is without dispute that she did not become a stockholder of Valleydale, Inc. until October of 1976; had no personal knowledge what-

soever of any of the actions which allegedly gave rise to the numerous debit and credit entries appearing on the typewritten list. The list under consideration was prepared by Tom Pompilli who was a bookkeeper and at one time occupied a semi-accounting position. Pompilli became employed by Valleydale, Inc. in November of 1976 and he prepared the typewritten list of debits and credits from the records of the Valleydale project from which he attempted to reconstruct the so called receivables. Pompilli just as Jane Pinciotti, did not have any personal knowledge whatsoever of the underlying transactions which gave rise to the various debit and credit entries appearing in the books and records he found. In addition to the typewritten list, Valleydale Corp. offered in evidence numerous checks and documents which were supposed to support the debit and credit entries appearing on the typewritten list. Among the debit entries appearing on the typewritten list are two items, one in the amount of $70,000 and the other in the amount of $20,000. Palm introduced into evidence two promissory notes in identical amounts, notes which were executed by Palm and which were payable to the order of Valleydale Corp. Both notes were marked "paid in full" and signed by Don Pinciotti, the husband of Jane Pinciotti. The record reveals that Pinciotti represented himself to be an authorized agent for all the stockholders of Valleydale Corp. and he stated that he was authorized to mark such notes "paid in full". He also stated that such notes were, indeed, considered by the parties to have been paid in full. Valleydale Corp. never offered any testimony to explain why the typewritten list of debits and credits still contained two debit entries totalling $92,-000, the total of the two notes, in spite of the fact that the two notes representing this debit entry were considered to have been satisfied.

The balance of the claim, as noted earlier, is the amount of $55,765.59 and is supposed to be supported by a document entitled "Valleydale Acres Trial Balance March 31, 1976." The trial balance includes an item which reads as follows: "Accounts Receivable (Brittany)—$55,765.59. This is the entry which is the basis of this portion of the claim.

■ It is without dispute that as of March 31, 1976, Valleydale Acres was a trade name used by Palm to operate the mobile home park facility owned and operated by Palm. It is equally without dispute that during this time period, Brittany was also a trade name of another mobile home park owned and operated by Palm. It is without dispute that neither facility was a separate legal entity as of March 31, 1976 and they were merely separate divisions of Palm. Thus, it is apparent that an entry appearing in the books of Valleydale Acres was merely an internal bookkeeping notation and could not reflect a true receivable, justly due and owing for the simple reason that one division of a corporation cannot be indebted to another division and cannot create a viable and enforceable debt unless the divisions are in fact separate legal entities. There is no evidence in this record which would support the proposition that Palm ever agreed to pay Valleydale Corp. the sum of $55,765.59 as part of Palm's acquisition of a 50% stock interest in the newly formed corporation which acquired Valleydale Acres. The fact of the matter is that the transfer of assets by Palm, notably the mobile home park, occurred on August 13, 1976, several months after the date of this trial balance. It is interesting to note that Pompilli, while preparing the trial balance, discovered an accounts payable allegedly due from Valleydale Acres to Palm in an amount in excess of $73,000. Pompilli then by a method unexplained, reduced the receivable to $41,569.79 by taking an arbitrary figure representing an alleged loss resulting from the operation of the Valleydale project and thereafter converted this receivable into capital stock of Palm.

■ The allowance of claims is governed by Bankruptcy Rule 301(b) which in pertinent part provides as follows:

*"Rule 301(b).*

(A) proof of claim . . . shall constitute prime facie evidence of the validity and amount of the claim".

Thus, the proof of claim itself is presumed to be a valid claim. *Whitney v. Dresser*, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906), and accordingly, if the claim is challenged, the burden is on the Trustee or the Debtor challenging the claim who must go forward and rebut the presumption by affirmative proof. *In re Avien, Inc.*, 390 F.Supp. 1335 (E.D.N.Y.1975). Rule 301 is applicable to Chapter XI cases by virtue of Rule 11–33(a), 3 *Collier on Bankruptcy*, § 57.13 (14th ed. 1977); *In re Gorgeous Blouse Co.*, 106 F.Supp. 465 (S.D.N.Y.1952). However, the ultimate burden of establishing the validity of a claim is on the claimant who must convince the Court by a fair preponderance of the evidence, *Rasmussen v. Gresly*, 77 F.2d 252 (8th Cir. 1935), that the claim should be allowed.

■ Applying the foregoing principles to the matter under consideration, this Court is constrained to conclude that Valleydale failed to discharge this burden and failed to present the quality of proof which would support this claim for the following reasons:

■ Valleydale failed to present any witnesses who had any personal knowledge of these transactions which allegedly gave rise either to the $40,659.75 or the $55,765.59 items composing the entire claim of $96,-464.34, the claim under consideration. Jane Pinciotti did not become an officer or stockholder until October of 1976, long after the pertinent transactions, as they appear from the typewritten list of debits and credits, occurred. The other witness, Tom Pompilli, equally had no personal knowledge of the entries and first became employed by Valleydale in November of 1976, again long after the time relevant to this controversy. In this connection it is important to point out that some of the original stockholders of Valleydale who were clearly privy to the transactions between Palm and Valleydale were never called as witnesses and there was no showing made that their testimony was not available either through a deposition or testimony presented in person. It is a long standing rule of evidence that the failure to bring before the court witnesses who would be able to elucidate the facts and, therefore, would naturally have been called by an honest claimant, permits an inference that the tenor of such testimony is unfavorable to the party's cause. *Wigmore on Evidence*, § 285 (2d ed. 1973). The documentary evidence offered in support of the claim, which is the typewritten list of debits and credits, is incompetent and lacks evidentiary value for the following reasons:

The documentary evidence did not satisfy the requirements of the *Federal Business Records Act*, Title 28, U.S.C., § 1732 and they did not qualify as an exception to the hearsay rule. As the United States Court of Appeals for the Fifth Circuit said, in *United States v. Brown*, 551 F.2d 639 at page 645 (1977):

"The purpose of the Business Records Act is 'to dispense with the necessity of proving each and every entry by the person or persons actually making them.' *Louisville & Nashville R.R. v. Knox Homes Corp.*, 5 Cir. 1965, 343 F.2d 887, 896. The underlying theory is that business records in the form regularly kept by the particular company and relied on by that company in the ordinary course of its business are trustworthy. See *United States v. Fendley*, 5 Cir. 1975, 522 F.2d 181, 184. In *Sabatino v. Curtiss National Bank of Miami Springs*, 5 Cir. 1969, 415 F.2d 632, this court set forth a three-pronged test to determine the admissibility of business records:

'(1) the records must be kept pursuant to some routine procedure designed to assure their accuracy,

(2) they must be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive), and

(3) they must not themselves be mere cumulations of hearsay or uninformed opinion.' 415 F.2d at 637. See further, *United States v. Ragano*, 5 Cir. 1975, 520 F.2d 1191, 1200."

It is clear from the testimony that the typewritten list of debt and credit entries was not made or kept pursuant to some routine procedure designed to assure its accuracy. It is equally apparent that it was

not the regular course of Valleydale's business to prepare such a statement. See *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). It further appears to the Court that the typewritten list was created mainly for the purposes of supporting the Proof of Claim. Moreover, the cancelled checks introduced in evidence were cancelled checks of Palm, not cancelled checks of Valleydale Corp. It is difficult for this Court to understand how Palm can be liable to Valleydale for disbursing funds from its own bank account.

Valleydale Corp. equally failed to present evidence to support the balance of the claim in the amount of $55,765.59. The sole basis for this portion of the claim is an entry in the trial balance of March 31, 1976 which is based on an alleged receivable due from Brittany Estates to Valleydale Acres. Again, neither Pinciotti nor Pompilli knew of the underlying transaction which allegedly gave rise to this debit entry. According to Pompilli, he concluded that this was a debt based on certain checks that he found on the premises when he arrived. It is without dispute that on March 31, 1976, neither Brittany nor Valleydale Acres were separate entities but merely divisions of Palm. There is no question, therefore, that since one division of a corporation cannot be indebted to another division of the same corporation, this entry did not represent a valid and enforceable legal obligation of Palm.

For the reasons stated, this Court is satisfied that since Valleydale failed to carry the burden placed on it by law to present convincing and satisfactory evidence that Palm is, in fact, indebted to Valleydale in any amount, the objection is well-taken and the claim shall be disallowed.

Accordingly, it is

ORDERED, ADJUDGED AND DE-- CREED that the Objection to Claim No. 32 filed by Valleydale Estates, Inc. be, and the same hereby, is sustained and Claim No. 32 filed by Valleydale Estates be, and the same hereby, is disallowed.