**In re Mills Malcolm BRINSON, III, and Mona Gay Brinson, Debtors.**

**Bankruptcy No. 91–4457–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 3, 1993.

Ronald Bergwerk, Jacksonville, FL, for debtors.

Lance Paul Cohen, Jacksonville, FL, for Clarence Laubinger.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon Debtors' Objection to Claim 9 filed by Clarence Laubinger ("Laubinger") and Laubinger's Motion Seeking Determination of Secured Status. The two matters were jointly heard on February 18, 1993, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

During 1986 and 1987 debtors purchased three parcels of unimproved land near Ocala, Florida, from Laubinger. The first purchase of 24.6 acres was made in February of 1986 for $164,500.00.

On April 24, 1987, debtors purchased the second tract for $233,525.00. This tract of approximately 24.4 acres was adjacent to the first tract. Debtors paid $5,525.00 in cash and gave Laubinger a purchase money mortgage for the balance.

Debtors intended to develop a mobile home park on the land. Accordingly, they procured permits and utilities; however no water meters were installed, no landscaping was done, and no mobile homes were put in place. Debtors expended approximately $86,000.00 in improvements.

On September 30, 1987, debtors purchased another adjoining tract from Laubinger. This third parcel consisted of 39.28 acres for which they paid $264,000.00. At closing, debtors paid $25,000.00 in cash with the balance carried through a purchase money mortgage in favor of Laubinger.

Debtors failed to make the payments on the land and in May of 1990 Laubinger filed an amended complaint in the state court.

Since the default, debtors have attempted to sell both tracts. They received a contract for sale of approximately 14 acres of the second parcel for $116,875.00. The offer involved the undeveloped portion of the tract and contemplated Laubinger continuing to carry the mortgage. Laubinger rejected the proposed sale.

The following month, debtors received a $230,000.00 contract on the third tract. Again, the deal required the continuation of the mortgage and Laubinger rejected the sale.

Debtors were unable to sell the land and, on August 20, 1991, filed a petition for relief under chapter 11.

Post-petition and after § 363(d) notice, debtors sold approximately 8.87 acres of the land for the gross amount of $57,655.00. After payment of closing costs, debtors netted $50,548.00 which was applied to the debt owed on the mortgage.

Also post-petition and after § 363(d) notice, debtors sold the original tract. Through the sale, debtors were able to fully satisfy the debt owed to Laubinger on this particular property.

On November 10, 1992, Laubinger filed claim 9 for $594,655.18, declaring $411,000.00 was secured and $183,655.18 was unsecured.

### Conclusions of Law

The allowance of claims is governed by § 502, which states in relevant part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement of applicable law for a reason other than because such claim is contingent or unmatured....

■ Thus, a claim is presumed valid and is *prima facie* evidence of both its validity and the amount. *In re Securities Groups*, 116 B.R. 839, 845 (Bankr.M.D.Fla.1990). A creditor or other interested party may file a written objection to any claim at which time the Court must resolve the objection after notice and a hearing.

In the case at bar, debtors filed a timely written objection to the Laubinger's claim. The objection challenges the amount of the claim which should be entitled to secured status, as well as the propriety of the unsecured, interest, and attorney's fees portions. Accordingly, resolution of the objection as a contested matter is appropriate.

■ This Court has held that the burden is on the objector to sustain its objection and, thus, overcome the *prima facie* validity of the claim. *In re Securities Groups*, 116 B.R. at 845; *In re St. Augustine Gun Works, Inc.*, 75 B.R. 495, 499 (Bankr. M.D.Fla.1987). The presumption must be overcome with affirmative proof. *Id.*

■ In addition, Laubinger has filed a Motion Seeking Determination of Secured Status pursuant to § 506(a). Section 506(a) provides in relevant part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Initially the Court must consider the appropriate standard to be used when valuing a secured claim. This Court has held that in valuing a creditor's security interest the proper question is what the creditor could get for the collateral through its customary means of disposition. *In re Adams*, 2 B.R. 313, 313–14 (Bankr.M.D.Fla.1980). Under this rationale the value is the fair market value, the price arrived at between a buyer and seller who are conducting a customary, rather than a forced, sale. *In re Cooper*, 7 B.R. 537, 538–40 (Bankr.N.D.Ga.1980).

The fair market value is to be determined as of the date of the filing of the petition. *In re Adams*, 2 B.R. at 314. Accordingly, the Court must determine the fair market value of the two tracts of land as of August 20, 1991.

John Arline, an MAI, SRA state certified real estate appraiser valued the property in its "as is" condition during the summer of 1992. In performing his appraisal Mr. Arline utilized the market approach and considered sales of similar types of property in the area. Mr. Arline initially valued the second parcel at $195,000.00 and the third at $216,000.00.

Mr. Arline re-examined the properties in February, 1993, and updated his appraisal. The updated version reached the same conclusions with regard to the second parcel, but concluded that parcel three had depreciated to $157,000.00 due to the implementation of a county-wide use management plan which restricted the use and development of debtors' property.

Debtor Mona Brinson testified that she believed the value of real estate exceeded the debt owed to Laubinger. She based her assessment on the two unconsummated purchase contracts and the post-petition sale of the 8.87 acres.

Additionally, Laubinger testified as to his opinion of the value of the property. Based on his experiences both as a real estate broker and developing mobile home communities, he valued the two tracts at $150,000.00 and $140,000.00 on the date of the bankruptcy filing.

He also testified that the interest included in the claim accrued pre-petition. Ten percent per annum was charged from each of the default dates through the date the state court amended complaint was filed. Interest then accrued, pursuant to state law, at eighteen percent until the petition date.

The Court concludes that although conducted some ten months after the filing of the petition, the appraiser John Arline's original valuation of the property is the most accurate. Accordingly, the Court values the second parcel at $195,000.00 and the third parcel at $216,000.00.

The Court next turns to the issues surrounding the appropriate amount of the claim. First debtors argue that the claim is barred by Florida law. They suggest that it is profoundly inequitable for a holder of purchase money mortgage to later claim that unimproved land is worth less than the price at which he sold it, absent an intervening circumstance.

 Florida law contemplates a judicial determination of a mortgagee's right to a deficiency, using equitable principles that are applied on a case by case basis. *Kurkjian v. Fish Carburetor Corp.*, 145 So.2d 523 (Fla.Dist.Ct.App. 1st Dist.1962). In weighing the equities to determine whether a deficiency decree will be granted, the court may take into consideration the fact that the mortgage involved is purchase money and that the mortgagee purchased the property at the foreclosure sale. However, these facts standing alone are not sufficient to deny a deficiency decree. *Taylor v. Prine*, 101 Fla. 967, 132 So. 464 (1931). Accordingly, Florida law does not absolutely bar the unsecured portion of Laubinger's claim.

Debtors also argue that the claim includes attorney's fees not allowable under § 506(b). Debtors have offered no evidence to support the proposition that the fees are for post-petition legal work. The claim states that the fees accrued pre-petition and debtors have failed to overcome the presumption of validity that attaches to the claim.

Additionally, the debtors maintain that the claim includes post-petition interest. Again debtors have offered no evidence to support such contention and the presumption of validity prevails.

█ Finally, debtors contend that when the first parcel was sold they were forced to pay $68,724.52 on a prior existing mortgage which was an obligation of Laubinger. Thus, they argue that a credit for such amount should be applied to Laubinger's claim. However, the debtor's have failed to meet their burden with regard to this amount. The evidence is insufficient to establish that the amount paid was actually a debt owed by Laubinger or that the satisfaction of such debt was indeed an overpayment made by debtors on behalf of Laubinger.

Having determined that the value of tract two is $195,000.00 and the value of tract three is $216,000.00, Laubinger's total secured claim comes to $411,000.00. Consequently, the remaining $183,655.18 is unsecured and the claim shall be allowed as filed.

A separate order will be entered in accordance with these Findings of Fact and Conclusions of Law.